UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNETTE KULICK,

                              Plaintiff,

                    -v.-

GORDON PROPERTY GROUP, LLC, MARK
BORTECK, and ROSS HIRSCH,

                              Defendants.

---

23 Civ. 9928 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Annette Kulick brings this action against Gordon Property Group, LLC ("GPG"), Mark Borteck ("Borteck"), and Ross Hirsch ("Hirsch") (collectively, "Defendants") alleging claims of gender-based discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, *codified as amended*, 42 U.S.C. §§ 2000e to 2000e-17; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 301; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-134. Before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the remainder of this Opinion, the Court grants the motion in part and denies it in part.

BACKGROUND[1]

## A.    Factual Background

Plaintiff is a Pennsylvania resident formerly employed as an Executive Legal Assistant at Defendant GPG (AC ¶ 8), which is a limited liability company registered in New York and permitted to do business there (*id.* ¶ 10).  During the time of Plaintiff's employment, Defendant Borteck was employed as GPG's Senior Counsel (*id.* ¶ 13), and Defendant Hirsch was employed as its General Counsel (*id.* ¶ 16).

Plaintiff began working as an Executive Legal Assistant to Borteck at GPG's Lexington Avenue location in or around May 2019.  (AC ¶ 20). Thereafter, Plaintiff alleges that Borteck and others subjected her to a litany of lewd and inappropriate behavior.  According to Plaintiff, during a meeting in Borteck's office within a month after she started working at GPG, the chairman of a related company "stared at [Plaintiff's] breasts while he told her that the wedding ring he gave his fifth wife said 'thank God for big tits.'"  (*Id.* ¶ 22).  In or around June 2019, Borteck started asking Plaintiff to search through his

---

[1]    This Opinion draws its facts from the Amended Complaint (or "AC" (Dkt. #23)), the operative complaint in this action, the well-pleaded allegations of which are taken as true for purposes of this Opinion.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678-79 (2009). The Court also relies, as appropriate, on certain of the exhibits attached to the Declaration of Ruth A. Rauls ( "Rauls Decl., Ex. [ ]" (Dkt. #31)), each of which is incorporated by reference in the Complaint.  *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #30); to the Declaration of Ruth A. Rauls as the "Rauls Decl." (Dkt. #31); to the exhibits attached thereto as "Rauls Decl., Ex. [ ]"; to Plaintiff's memorandum of law in opposition as "Pl. Opp." (Dkt. #34); and to Defendants' memorandum of law in reply as "Def. Reply" (Dkt. #35).

emails, which contained photos of nude and scantily-clad women, as well as emails referring to Borteck's accounts on dating and pornographic websites. (*Id.* ¶¶ 23-24).  When Plaintiff objected to these materials as offensive and misogynistic, Borteck did not remove the emails or take any action to prevent Plaintiff's exposure to them.  (*Id.* ¶¶ 26-28).  Borteck also spoke to Plaintiff through the bathroom door, over Plaintiff's objection.  (*Id.* ¶ 32).

Plaintiff alleges that Borteck treated male and female employees differently in many respects, including in how he addressed them.  During phone conversations with Plaintiff and others, Borteck referred to another female employee as "sweetheart," "honey," and "my little butterfly."  (AC ¶¶ 34-35).  He did not refer to male GPG employees by such nicknames.  (*Id.* ¶ 36). Similarly, Borteck called Plaintiff a "daschund" and a "*schmatta*," which Plaintiff understood to be a Yiddish term for "rag," though he did not similarly insult male employees.  (*Id.* ¶¶ 37-38).  He would ask Plaintiff, "have you looked at yourself lately?" and made other comments about her weight and appearance, though he made no such comments about male GPG employees. (*Id.* ¶¶ 40-41).  And Borteck refused to attend GPG's sexual harassment training, which Plaintiff spearheaded, because, by his own account, he "want[ed] to remain a perv."  (*Id.* ¶¶ 42-44 (alteration in original)).

On April 1, 2021, Plaintiff reported Borteck's conduct — specifically, the inappropriate emails and his refusal to take the sexual harassment training — to a legal assistant, who told Plaintiff that she would escalate the complaint. (AC ¶¶ 45-47).  Thereafter, Plaintiff informed Hirsch of Borteck's conduct,

though she alleges Hirsch took no action to investigate it.  (*Id.* ¶ 49).  Instead, Hirsch criticized Plaintiff's work performance and offered her two months' pay to leave GPG.  (*Id.* ¶ 50).  In an April 28, 2021 email to Plaintiff, Hirsch wrote: "[Y]ou informed me that it is your preference to remain at the company at this time … please confirm that you no longer feel that you cannot work with Mark [Borteck], that your concerns have been addressed to your satisfaction[.]"  (*Id.* ¶ 51 (omission and first alteration in original)).  On a separate occasion, Plaintiff overheard GPG's owner discussing Plaintiff's complaints with Borteck. (*Id.* ¶¶ 52-53).

In or about November 2021, Plaintiff was permitted to continue working in her role remotely, from a location outside New York City.  (AC ¶ 54).  But on December 3, 2021, Hirsch informed Plaintiff via email that she would only be permitted to work remotely through January 14, 2022, at which time she would be terminated.  (*Id.* ¶ 55).  On or about December 17, 2021, "Borteck admitted to [Plaintiff] that if she had not reported him, he would have allowed [Plaintiff] to continue working remotely."  (*Id.* ¶ 57).  After Plaintiff requested a termination letter, on January 5, 2022, Hirsch sent her one that did not include a reason for her termination.  (*Id.* ¶¶ 58-59).

Based on these allegations, Plaintiff brings several claims against Defendants.  She claims that GPG violated Title VII by discriminating against her based on her gender (Count I), subjecting her to a hostile work environment (Count II), and retaliating against her (Count III).  She claims that all three Defendants violated the NYSHRL by discriminating against her based

on her gender (Count IV), subjecting her to a hostile work environment
(Count V), and retaliating against her (Count VI).  Likewise, she claims that all
three Defendants violated the NYCHRL by discriminating against her based on
her gender (Count VII), subjecting her to a hostile work environment
(Count VIII), and retaliating against her (Count IX).  Lastly, she claims that
Borteck and Hirsch aided and abetted GPG's violations of the NYSHRL and the
NYCHRL (Count X).

## B.    Procedural Background

Before Plaintiff initiated this action, she filed a complaint with the New
York State Division on Human Rights (the "NYSDHR") and the Equal
Employment Opportunity Commission (the "EEOC") on or about March 13,
2022.  (AC ¶ 6).  The NYSDHR dismissed her complaint on or about
September 5, 2023.  (*Id.*).  The EEOC issued Plaintiff a Notice of Right to Sue
on or about October 18, 2023.  (*Id.*).

Plaintiff initiated this action by filing her original complaint on
November 9, 2023.  (Dkt. #1).  Within ten days of initiating the action, Plaintiff
provided notice of it to the New York City Commission on Human Rights and
Corporation Counsel.  (AC ¶ 7).  On January 11, 2024, Defendants requested a
pre-motion conference to discuss an anticipated motion to dismiss some of
Plaintiff's claims.  (Dkt. #7).  Plaintiff filed a letter motion in opposition on
January 24, 2024.  (Dkt. #11).  The Court held a pre-motion conference on
February 29, 2024, at which the Court set a briefing schedule for Defendants'
motion to dismiss (*see* February 29, 2024 Minute Entry).  In the interim, on

March 15, 2024, the Court entered a civil case management plan and scheduling order.  (Dkt. #15).  On March 29, 2024, Defendants filed their partial motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. #16, 17).

On April 16, 2024, Plaintiff filed the Amended Complaint (the "AC" (Dkt. #23)), the operative complaint in this action.  Accordingly, on April 17, 2024, the Court denied as moot Defendants' motion to dismiss and ordered Defendants to answer or otherwise respond to the Amended Complaint on or before May 17, 2024.  (Dkt. #25).

On May 17, 2024, Defendants filed the instant motion to dismiss part of the Amended Complaint (Dkt. #29), a memorandum of law in support thereof (Dkt. #30), and the Declaration of Ruth A. Rauls (Dkt. #31).  On May 29, 2024, the Court set a briefing schedule and extended the existing discovery deadlines.  (Dkt. #33).  On July 12, 2024, Plaintiff filed her brief in opposition to Defendants' motion to dismiss.  (Dkt. #34).  And on July 26, 2024, Defendants filed their reply brief.  (Dkt. #35).

## DISCUSSION

### A.    Applicable Law

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks

6

omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff is entitled to relief if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotations marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted and alteration adopted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

On a motion to dismiss, "[t]he Court may consider any written instrument attached to the [c]omplaint as an exhibit, any statements or documents incorporated by reference in the [c]omplaint, documents that are

'integral' to the [c]omplaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

**B.    Analysis**

To review, Defendants seek dismissal of the discrimination claims under Title VII, the NYSHRL, and the NYCHRL (Counts I, IV, and VII, respectively). (Def. Br. 1-2).[2] They seek dismissal of the NYSHRL claims as to the individual Defendants Borteck and Hirsch (Counts IV-V).  (*Id.* at 2).  They seek dismissal of the remaining claims against Hirsch (Counts IV-X).  (*Id.*).  And they seek dismissal of the retaliation claims under all three statutes against all Defendants (Counts III, VI, and IX).  (*Id.* at 3).

### 1.    The Court Can Consider the Emails Attached to the Rauls Declaration

Before addressing the merits of Defendants' claims, the Court must address a threshold matter: whether it can consider certain emails attached to the Rauls Declaration that Defendants maintain are incorporated by reference in the Amended Complaint.  (*See* Rauls Decl., Ex. A, B; Def. Br. 5 & n.2, 6 & n.4, 15, 17; Def. Reply 4-6).  The Court finds that it can.

---

[2]    Defendants do not seek dismissal of Count II (Title VII hostile work environment against GPG only); Count V (NYSHRL hostile work environment) as to GPG; Count VIII (NYCHRL hostile work environment) as to GPG and Borteck; and Count X (NYSHRL and NYCHRL aiding and abetting) as to Borteck.  (*See generally* Def. Br.).

"To be incorporated into the complaint by reference, 'the [c]omplaint must make clear, definite and substantial reference to the documents.'" *Remcoda, LLC* v. *Ridge Hill Trading (PTY) LTD*, No. 21 Civ. 979 (ER), 2022 WL 603998, at *11 (S.D.N.Y. Mar. 1, 2022) (quoting *Mosdos Chofetz Chaim, Inc.* v. *Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (alteration in original)). "'Mere discussion or limited quotation of a document in a complaint' does not qualify as incorporation." *Vasquez* v. *Yadali*, No. 16 Civ. 895 (NSR), 2020 WL 1082786, at *4 (S.D.N.Y. Mar. 5, 2020) (quoting *DeMasi* v. *Benefico*, 567 F. Supp. 2d 449, 453 (S.D.N.Y. 2008)). But where a complaint directly refers to specific emails in an email chain, a court can consider the email chain as incorporated by reference in the complaint. *See, e.g.*, *Cromwell-Gibbs* v. *Staybridge Suite Times Square*, No. 16 Civ. 5169 (KPF), 2017 WL 2684063, at *1 n.2 (S.D.N.Y. June 20, 2017) (holding that an email chain was incorporated by reference when the complaint made "direct reference to the e-mail chain, [and] the contents of the e-mails exchanged"); *Tacon* v. *Cromwell*, No. 23 Civ. 8100 (KMK), 2024 WL 4275625, at *2 (S.D.N.Y. Sept. 24, 2024) (finding an email chain incorporated by reference where the complaint "makes clear reference to specific emails from these chains, and Plaintiff clearly relied upon those emails in framing the" complaint (internal citations omitted)).

Here, Defendants wish the Court to consider two email chains, the first of which was between Plaintiff and Hirsch beginning on April 7, 2021, and ending on April 28, 2021. (Rauls Decl., Ex. A). In the Amended Complaint, Plaintiff quotes from an April 28, 2021 email in this chain and adds the gloss

that, in it, "[i]nstead of remedying the harassment, Hirsch attempted to insulate Gordon Property from liability." (AC ¶ 51). By making clear, definite, and substantial reference to the April 28, 2021 email, Plaintiff incorporates the entire email by reference.[3] Additionally, Defendants wish the Court to consider an email chain between Plaintiff and Hirsch beginning on December 3, 2021, and ending on January 11, 2022. (Rauls Decl., Ex. B). Plaintiff refers to five emails from this chain in her Amended Complaint (AC ¶¶ 55-56, 58-59), and because in doing so she refers to the correspondence more generally, her complaint incorporates the entire chain by reference. Thus, the Court can consider this email chain. *See, e.g.*, *Cromwell-Gibbs*, 2017 WL 2684063, at *1 n.2; *Tacon*, 2024 WL 4275625, at *2.

Even if the relevant emails were not incorporated by reference in the Amended Complaint, the Court can consider them as documents that are "integral" to it. *See Vasquez*, 2020 WL 1082786, at *4 (citing *Chambers*, 282 F.3d at 153). For the Court to do so, a "party [must] establish that the plaintiff had 'actual notice' of the documents and relied upon them in setting forth her claim." *Id.* (citing *Chambers*, 282 F.3d at 153). Here, Plaintiff clearly had actual notice of these documents because she is a party to the emails on these chains (*see generally* Rauls Decl., Ex. A, B), and she cites to emails from these chains in her complaint (*see* AC ¶¶ 51, 55-56, 58-59). As mentioned, Plaintiff

---

[3]     The Court need not address whether, by quoting from this one email, Plaintiff incorporates by reference all emails in this chain into the Amended Complaint. The other emails in this chain do not factor into the Court's analysis of the sufficiency of the Amended Complaint's allegations.

relies upon the April 28, 2021 email in setting forth her discrimination and retaliation claims against Hirsch. (*See* AC ¶ 51; Counts IV, VI-VII, IX). And she relies upon the December 2021-January 2022 email chain in setting forth her discrimination and retaliation claims against all three Defendants. (*See* AC ¶¶ 55-56, 58-59; Counts I, III-IV, VI-VII, IX). Therefore, as an independent basis for its ability to review the emails, the Court can consider them as documents integral to the Amended Complaint.

### 2. The Court Dismisses All of Plaintiff's Title VII Discrimination Claims and Some of Her NYSHRL and NYCHRL Discrimination Claims

#### a. Plaintiff Fails to Allege Discrimination Under Title VII

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). Ordinarily, discrimination claims under Title VII are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973). *See Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *See Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). To do so, the plaintiff must show that "[i] [s]he belonged to a protected class; [ii] [s]he was qualified for the position [s]he held; [iii] [s]he suffered an adverse employment action; and [iv] that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown* v. *City of Syracuse*, 673

F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138).  The "burden of establishing this prima facie case in employment discrimination cases is minimal." *Lenzi* v. *Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (internal quotation marks omitted) (quoting *McGuinness* v. *Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)).

At the motion to dismiss stage, however, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*[.]" *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).  Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation." *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  For employment discrimination claims under Title VII, "a plaintiff must plausibly allege that [i] the employer took adverse action against [her] and [ii] [her] race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 87.  A plaintiff may satisfy this standard by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* Short of direct evidence, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has *at least minimal support* for the proposition that the *employer was motivated by discriminatory intent*." *Littlejohn*, 795 F.3d at 311 (emphases added).  In other words, the facts

alleged "need only give plausible support to a minimal inference of discriminatory motivation." *Id.*

Here, Defendants contest whether Plaintiff has sufficiently alleged an adverse employment action and the requisite discriminatory motive. The Court addresses each argument in turn, and ultimately finds that, while Plaintiff has plausibly alleged an adverse employment action, she has failed to allege facts demonstrating a plausible inference of discrimination.

### i.    Plaintiff Plausibly Alleges That She Sustained an Adverse Employment Action

"An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry* v. *Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (internal quotation marks omitted). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (internal quotation marks omitted).

Plaintiff alleges that she was terminated. (*See* AC ¶¶ 55-59). Defendants refute this claim, stating that "the December [email c]orrespondence contradicts [Plaintiff]'s allegation that she was terminated, alone warranting dismissal as to the discrimination claims." (Def. Reply 7 n.3). Defendants appear to argue that Plaintiff was not terminated, but rather quit because she

decided to move to Pennsylvania and was permitted to work remotely for a defined time period after she moved.  (*See* Def. Br. 17-19).[4]

The Court finds that Plaintiff has plausibly alleged that she sustained an adverse employment action, to wit, that she was terminated.  Plaintiff alleges that "Hirsch responded to [her] complaints by criticizing her work performance and eventually offering her two months of pay to leave the company."  (AC ¶ 50).  Moreover, she alleges that Hirsch refused her request to continue working remotely after January 14, 2022, and terminated her employment thereafter.  (*Id.* ¶¶ 55-56).  And Plaintiff alleges that Borteck told her that if she had not reported him, he would have allowed her to continue working remotely. (*Id.* ¶ 57).  These allegations are not contradicted by the December 2021-January 2022 email chain, incorporated by reference into the Amended Complaint.  (Rauls Decl., Ex. B).  On December 3, 2021, Hirsch informed Plaintiff that she would be permitted to work remotely through January 14, 2022, after which she would be terminated.  (AC ¶ 55).  This accords with the December 3, 2021 email, in which Hirsch memorializes that Plaintiff was due to relocate to Pennsylvania; that, consequently, December 17, 2021, would be her last day in the office; and that "*Mark [Borteck]* and [Hirsch]" wanted her to work remotely through January 14, 2022, until they could find a replacement for her.  (Rauls Decl., Ex. B at 5 (emphasis added)).  And as just noted, Plaintiff alleges that Borteck admitted to her two weeks later (on or about December 17,

---

[4]     This is the thrust of Defendants' motion to dismiss Plaintiff's retaliation claims (*see* Def. Br. 17-19), and it is equally relevant to the adverse employment action element of Plaintiff's discrimination claims.

2021) that, had she not reported him, he would have allowed her to continue working remotely.  (AC ¶ 57).

"[D]raw[ing] all reasonable inferences in Plaintiff['s] favor," *Faber*, 648 F.3d at 104, based on Borteck's statement, Plaintiff plausibly alleges that she could have continued working remotely *for an indefinite period* but was instead terminated.  As alleged, Plaintiff made her January 3, 2022 offer to continue working remotely beyond January 14, 2022 while GPG searched for a replacement (Rauls Decl., Ex. B at 4-5); she did so *after* learning from Borteck the true reason why she could not continue to work for GPG remotely.  Nothing in the email correspondence from January 3, 2022, onward contradicts this plausible inference.  Thus, Plaintiff has plausibly alleged that she was terminated, and therefore sustained an adverse employment action.

### ii.    Plaintiff Fails to Allege a Causal Nexus Between the Adverse Employment Action and a Discriminatory Motive

Under Title VII, a plaintiff need not prove (or plead) that "'the causal link between injury and wrong is so close that the injury would not have occurred but for the act.'"  *Lenzi*, 944 F.3d at 107 (quoting *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 343 (2013)).  "'So-called but-for causation is not the test.'"  *Id.* (quoting *Nassar*, 570 U.S. at 343).  Instead, a plaintiff need only plead facts that plausibly allege that "'the motive to discriminate was *one of the employer's motives*, even if the employer also had other, lawful motives that were causative in the employer's decision.'"  *Id.* (quoting *Nassar*, 570 U.S. at 343).  A plaintiff meets this burden by "alleging facts that directly show

15

discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.  Plausible allegations to this effect may arise from a range of circumstances, "including, but not limited to, 'the employer's criticism of the plaintiff's performance in ... degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz* v. *Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  Here, Plaintiff attempts to allege discrimination based on (i) a comparison to non-protected employees, and (ii) the supposed causal link between the discriminatory remarks and the adverse action. Plaintiff's pleading fails on both fronts.

To begin, Plaintiff fails to plausibly allege discrimination based on a comparison to non-protected employees.  "A showing of disparate treatment — that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [the plaintiff's] protected group — is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case." *Ruiz* v. *County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (internal quotation marks omitted).  "To make this *prima facie* showing, there must be 'a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases.'" *King* v. *Aramark Servs., Inc.*, 96 F.4th 546, 563 (2d Cir. 2024) (quoting *Ruiz*, 609 F.3d at 494). "Although the question of whether two employees are similarly situated

presents a question of fact, rather than a legal question to be resolved on a motion to dismiss, it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees were treated differently while similarly situated." *Makhsudova* v. *City of New York*, No. 20 Civ. 10728 (KPF), 2022 WL 1571152, at *6 (S.D.N.Y. May 18, 2022) (internal quotation marks omitted).  Plaintiff alleges that male employees were not subjected to the same sort of nicknames or derogatory comments as she and other female employees.  (AC ¶¶ 36, 38, 41).  However, Plaintiff does not specifically allege who these male employees are, nor anything about these would-be comparators.  As Plaintiff's allegations about the treatment of other male employees are too generic, the Court cannot find a plausible inference of discrimination on the basis of disparate treatment.  *See, e.g.*, *Henry* v. *N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) (at the motion to dismiss stage, finding that the complaint's "fail[ure] to describe who these [comparators] are, what their responsibilities were, how their workplace conduct compared to [the plaintiff's], or how they were treated" meant that these amounted to "generic allegation[s] of disparate treatment" insufficient to state a plausible disparate treatment claim); *Paupaw-Myrie* v. *Mount Vernon City Sch. Dist.*, 653 F. Supp. 3d 80, 99 (S.D.N.Y. 2023) ("'[A] Title VII plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass.'" (quoting *Goodine* v. *Suffolk Cnty. Water Auth.*, No. 14 Civ. 4514 (JS) (ARL), 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017))).

17

The Court also finds that while Plaintiff has alleged gender-based remarks by her supervisor, she has failed to show a causal nexus between those remarks and the adverse employment action. As discussed, Plaintiff alleges a series of gender-based comments by Borteck. (*See* AC ¶¶ 34-35, 37, 40). "[G]ender-based comments can serve as evidence that gender played an impermissible role in an adverse employment decision." *King*, 96 F.4th at 564 (citing *Back* v. *Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004)). In particular, the Second Circuit in *King* found that the "singling out of [a female employee] for weight-related remarks and conduct — remarks and conduct that [the supervisor] did not direct toward her male peers — reflected not only a bias against individuals with certain body types, but also a gender-based bias," such that this evidence could go to the jury. *Id.* Here, Plaintiff alleges that Borteck referred to her as a "daschund" and a "*schmatta.*" (AC ¶ 37). She alleges that Borteck, in Plaintiff's presence, referred to another female employee as "sweetheart," "honey," and "my little butterfly," making Plaintiff feel "extremely uncomfortable." (*Id.* ¶¶ 34-35). She alleges that Borteck would ask Plaintiff "have you looked at yourself lately?" and made other comments about her weight and appearance. (*Id.* ¶ 40). And she alleges that Kulick told her he did not want to take GPG's sexual harassment training because he "want[ed] to remain a perv." (*Id.* ¶ 44). Such remarks can give rise to a plausible inference of discrimination based on Plaintiff's gender.

However, Plaintiff has not sufficiently alleged a causal nexus between these remarks and the adverse employment action (her termination). "Typically, 'verbal comments may raise an inference of discrimination, but not where they lack a causal nexus' to an adverse employment action." *Karupaiyan* v. *CVS Health Corp.*, No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *13 (S.D.N.Y. Sept. 23, 2021) (quoting *Luka* v. *Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (internal quotation marks omitted)). The Second Circuit has established a four-factor test to determine whether purportedly offensive statements suggest discriminatory bias or are merely "stray remarks." The test considers: "'[i] who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); [ii] when the remark was made in relation to the employment decision at issue; [iii] the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and [iv] the context in which the remark was made (i.e., whether it was related to the decision-making process).'" *Fried* v. *LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (summary order) (quoting *Henry* v. *Wyeth Pharms.*, 616 F.3d 134, 149 (2d Cir. 2010)). Applying these factors here, the Court finds that Borteck's remarks do not give rise to an inference that Plaintiff's termination was tinged with discrimination. While Borteck was one of Plaintiff's supervisors, and the allegations suggest that Borteck was involved in the decision to terminate Plaintiff's employment (*see* AC ¶ 57), Plaintiff has not sufficiently alleged a temporal or causal proximity between Borteck's offensive remarks and Plaintiff's termination. In other words, the Amended Complaint plausibly

alleges that Borteck harbored an anti-woman bias, but not that he terminated Plaintiff's employment *because of* this anti-woman bias. Rather, as the Court will discuss later, the allegations in the Amended Complaint support the conclusion that Borteck terminated Plaintiff in retaliation for reporting his misogynistic misconduct. Accordingly, the Court dismisses Count I of the Amended Complaint.

> **b.    Plaintiff Plausibly Alleges Discrimination Under the NYSHRL and the NYCHRL as to GPG, Fails to Allege Discrimination Under the NYSHRL as to Borteck and Hirsch, and Plausibly Alleges Discrimination Under the NYCHRL as to Borteck and Hirsch**

Defendants seek dismissal of the NYSHRL and the NYCHRL discrimination claims against GPG (Counts IV (NYSHRL) and VII (NYCHRL)). (Def. Br. 10-11). They argue that Plaintiff fails to allege that her termination was motivated by discriminatory animus. (*Id.* at 11). Defendants also argue that Plaintiff's NYSHRL and NYCHRL discrimination claims should be dismissed as duplicative of her hostile work environment claims. (*Id.* at 11-12). Finally, Defendants seek dismissal of the NYSHRL discrimination claims against the individual Defendants, Borteck and Hirsch (Count IV). (Def. Br. 12-13).

The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice ... [f]or an employer ... because of an individual's ... gender identity or expression ... [or] sex ... to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The pleading

standards for the NYSHRL were generally the same as those for Title VII until the New York legislature amended the NYSHRL on August 19, 2019.  *See Syeed* v. *Bloomberg, L.P.*, 568 F. Supp. 3d 314, 343 (S.D.N.Y. 2021), *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024) (summary order).  The NYSHRL was amended to provide that its provisions "shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed."  N.Y. Exec. Law § 300.  This amendment "only appl[ies] to claims that accrue on or after the effective date of October 11, 2019."  *Wellner* v. *Montefiore Med. Ctr.*, No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).  "[A] cause of action for discrimination under the NYSHRL accrues … on the date of the alleged discriminatory act."  *Fair Hous. Just. Ctr., Inc.* v. *JDS Dev. LLC*, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020) (internal quotation marks omitted and alteration adopted).  Therefore, the pre-amendment standard applies to acts alleged to have occurred prior to October 11, 2019.  *Syeed*, 568 F. Supp. 3d at 343.  Conversely, the post-amendment standard applies to conduct alleged to have taken place after October 11, 2019, or where the complaint is ambiguous as to when the conduct took place (so as to construe the allegations in the light most favorable to the Plaintiff).  *Id.* at 343-44.

Prior to the 2019 amendment, "it was generally more difficult to state a claim under the NYSHRL than under the NYCHRL."  *Syeed*, 568 F. Supp. 3d at

343 (citing *Soloviev* v. *Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) ("[A] complaint may fail to state a claim under Title VII and [the] NYSHRL but still be allowed to proceed under [the] NYCHRL.")).  But the 2019 amendment "render[ed] the standard for [NYSHRL] claims closer to the standard of the NYCHRL." *Livingston* v. *City of New York*, 563 F. Supp. 3d 201, 232 n.14 (S.D.N.Y. 2021); *see Charles* v. *City of New York*, No. 21 Civ. 5567 (JPC), 2023 WL 2752123, at *6 (S.D.N.Y. Mar. 31, 2023) (considering plaintiff's NYCHRL and NYSHRL claims together).  "The case law, however, has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler* v. *Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023); *compare Arazi* v. *Cohen Bros. Realty Corp.*, No. 20 Civ. 8837 (GHW), 2022 WL 912940, at *16 (S.D.N.Y. Mar. 28, 2022) ("After that amendment, the standard for NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019."), *and Syeed*, 568 F. Supp. 3d at 345 ("[T]he amended NYSHRL adopts the same standard as the NYCHRL."), *with Wellner*, 2019 WL 4081898, at *5 n.4 (amendment brings NYSHRL "closer to" NYCHRL standard), *and Nezaj* v. *PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) ("[I]t is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims.").  This Court has previously "assume[d]" for purposes of a Rule 12(b)(6) motion "that the amended NYSHRL aligns with the NYCHRL." *Wright* v. *City of New York*, No. 23

22

Civ. 3149 (KPF), 2024 WL 3952722, at *6 (S.D.N.Y. Aug. 27, 2024). As the

amended NYSHRL standard is, at the very least, "closer to" the NYCHRL

standard, *Wellner*, 2019 WL 4081898, at *5 n.4, in order to view the Amended

Complaint in the light most favorable to Plaintiff, the Court assumes for

purposes of this motion that the amended NYSHRL aligns with the NYCHRL.

The NYCHRL (and, for purposes of this motion, the post-amendment

NYSHRL) makes it unlawful "[f]or an employer or an employee or agent thereof,

because of the actual or perceived ... gender ... of any person ... [t]o

discriminate against such person in compensation or in terms, conditions or

privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). To state a

viable discrimination claim under the NYCHRL (and, for purposes of this

motion, the post-amendment NYSHRL), a plaintiff need not allege that she

suffered an adverse employment action or that "discriminatory animus was the

but-for cause or even the primary motivation of their alleged mistreatment."

*Delo* v. *Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 183 (S.D.N.Y.

2023). Rather, they must allege only that they have been "treated less well at

least in part because of [their] gender." *Id.* (alteration in original) (internal

quotation marks omitted) (quoting *Mihalik* v. *Credit Agricole Cheuvreux N. Am.,

Inc.*, 715 F.3d 102, 110 (2d Cir. 2013)).

In doing so, a plaintiff must still allege "differential treatment that is

'more than trivial, insubstantial, or petty.'" *Torre* v. *Charter Comm'cns, Inc.*,

493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (quoting *Gorman* v. *Covidien, LLC*,

146 F. Supp. 3d 509, 530 (S.D.N.Y. 2015)). "That is, ... 'a plaintiff must only

show differential treatment of any degree based on a discriminatory motive[.]"
*Nezaj*, 719 F. Supp. 3d at 330 (quoting *Gorokhovsky* v. *N.Y.C. Hous. Auth.*, 552
F. App'x 100, 102 (2d Cir. 2014) (summary order)). "Unlike Title VII, the
NYCHRL thus does not require a connection between the discriminatory
conduct and a materially adverse employment action." *Id.* at 330-31 (internal
quotation marks omitted). Even a "single comment that objectifies women …
made in circumstances where that comment would, for example, signal views
about the role of women in the workplace [can] be actionable." *Williams* v.
*N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 41 n.30 (1st Dep't 2009); *see also Mihalik*,
715 F.3d at 114 ("*Williams* made clear … that … [the defendant's] alleged
mistreatment of [the plaintiff] would be actionable under the NYCHRL *even if it
was unrelated to her discharge* and was neither severe nor pervasive."
(emphasis added)); *id.* ("[E]ven assuming that [the plaintiff] could not prove she
was dismissed for a discriminatory reason … , [the plaintiff] could still recover
for any other differential treatment based on her gender."). "While the NYCHRL
is 'not a general civility code,' it should be construed 'broadly in favor of
discrimination plaintiffs, to the extent that such construction is reasonably
possible[.]'" *Delo*, 685 F. Supp. 3d at 183 (quoting *Mihalik*, 715 F.3d at 109,
113).

Finally, the NYSHRL permits liability for discrimination *by employers
only*, whereas the NYCHRL extends liability to employees, too. *Nezaj*, 719 F.
Supp. 3d at 329-30. "Under both the NYCHRL and the NYSHRL, a person
qualifying as an 'employer' may be held liable for the discriminatory actions of

others." *Id.* at 329 (citing *Doe* v. *Bloomberg L.P.*, 36 N.Y.3d 450, 459 (2021)). Furthermore, "where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer[.] That is so even if the individual holds a high post at the employer or owns the entity."[5] *Id.* (citing *Doe*, 36 N.Y.3d at 457-58). The NYCHRL, on the other hand, "extends liability to employees, not just employers, a feature of the statute that *Doe* itself recognizes." *Id.* at 330 (citing *Doe*, 36 N.Y.3d at 459). Therefore, an individual employee can be held liable under the NYCHRL for his own participation in discrimination (as well as for aiding and abetting another's discriminatory conduct). *Id.*

The Court has analyzed Plaintiff's NYSHRL and NYCHRL discrimination allegations. It finds that Plaintiff plausibly alleges discrimination under the NYSHRL (Count IV) as to GPG, but not as to Borteck or Hirsch. Similarly, the Court finds that Plaintiff plausibly alleges discrimination under the NYCHRL (Count VII) as to GPG and Borteck, but not as to Hirsch.

The Court first determines that the more liberal, post-amendment standard applies to Plaintiff's NYSHRL claims. Plaintiff joined GPG around May 2019. (*See* AC ¶ 20). Some of the allegedly discriminatory conduct took place in June 2019, before the October 11, 2019 cutoff date. (*See id.* ¶ 22). But the rest of the allegedly discriminatory conduct took place after the cutoff

---

[5]    "However, the NYSHRL *does* permit an individual (including an employee) to be held liable for aiding and abetting a liable employer." *Nezaj* v. *PS450 Bar & Rest.*, 719 F. Supp. 3d 318, 329-30 (S.D.N.Y. 2024) (citing *Baptiste* v. *City Univ. of N.Y.*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023)). The Court discusses Plaintiff's aiding and abetting claims later in this Opinion.

date.  Though Plaintiff alleges that Borteck "started asking [Plaintiff]" to search through his emails "*[b]eginning* in or about June 2019" (*id.* ¶ 23 (emphasis added)), the allegations are that this conduct occurred "on a regular basis" and thus continued through October 2019 and beyond (*see* ¶¶ 23-28).  The rest of the alleged conduct either occurred on specified dates *after* October 11, 2019, or on an unspecified date.  For example, Plaintiff alleges that Borteck "would ask" Plaintiff about her appearance and weight.  (*Id.* ¶ 40).  When, as here, the complaint is ambiguous as to when the conduct took place, the Court applies the post-amendment NYSHRL standard so as to construe the complaint in the light most favorable to the plaintiff.  *See Syeed*, 568 F. Supp. 3d at 343-44.

Under this standard, Plaintiff's discrimination claims under both the NYSHRL (Count IV) and the NYCHRL (Count VII) *as to GPG* survive because she has sufficiently alleged that she has been treated less well at least in part because of her gender.  *See Delo*, 685 F. Supp. 3d at 183.  Plaintiff's allegations that Borteck made her uncomfortable by, for example, referring to another female employee by gender-stereotypical nicknames in her presence (AC ¶¶ 34-35) and insulting her weight and appearance (*id.* ¶ 40) are sufficient.  These comments objectify women and were made in circumstances where they would signal views about the role of women in the workplace.  *See Nezaj*, 719 F. Supp. 3d at 331 (citing *Williams*, 872 N.Y.S.2d at 41 n.30); *see also Mihalik*, 715 F.3d at 114.  As a result, Plaintiff has sufficiently alleged that she was treated less well because of her gender.

Defendants separately argue that the Court should dismiss these discrimination claims as duplicative of Plaintiff's hostile work environment claims. (Def. Br. 11 (citing *Samuels* v. *City of New York*, No. 22 Civ. 1904 (JGK), 2023 WL 5717892, at *11 (S.D.N.Y. Sept. 5, 2023) (dismissing a plaintiff's NYSHRL and NYCHRL gender discrimination claims as duplicative of her hostile work environment claims))).[6]  The Court declines to do so.  The Court has previously recognized that the same standard applies to discrimination and hostile work environment claims under the NYCHRL (and, for purposes of this motion, the NYSHRL), and it has allowed both types of claims to go forward together.  *See Karupaiyan*, 2021 WL 4341132, at *26 ("[F]or essentially the same reasons stated in the context of his surviving NYCHRL disparate treatment claim, Plaintiff's NYCHRL hostile work environment claim also survives[.]"); *see also Makhsudova*, 2022 WL 1571152, at *11; *Zagerson* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 11055 (KPF), 2022 WL 292917, at *16 (S.D.N.Y. Jan. 31, 2022).  Thus, the Court denies Defendants' motion to dismiss the claims of discrimination against GPG under the NYSHRL (Count IV) and the NYCHRL (Count VII).

However, the Court dismisses Plaintiff's claims of discrimination under the NYSHRL (Count IV) as to the individual Defendants, Borteck and Hirsch. Only "employer[s]" can be liable for discrimination under the NYSHRL.  *See* N.Y. Exec. Law § 296(1)(a).  At all relevant times, Plaintiff's employer was GPG,

---

[6]    Defendants do not seek to dismiss Plaintiff's Title VII hostile work environment claim against GPG (Count II).  The Court analyzes Plaintiff's other hostile work environment claims *infra*.

a corporate entity.  (AC ¶¶ 8, 20-21).  For NYSHRL purposes, "where a corporate entity is the plaintiff's employer, an individual affiliated with the entity cannot himself qualify as the employer."  *Nezaj*, 719 F. Supp. 3d at 329 (citing *Doe*, 36 N.Y.3d at 457-58).  As Borteck and Hirsch are individuals affiliated with the corporate entity, they cannot qualify as Plaintiff's employer, and therefore the Court dismisses Count IV as to the individual Defendants only, with prejudice.

That leaves two more discrimination claims: a NYCHRL claim against Borteck, and a NYCHRL against Hirsch (Count VII).  The NYCHRL claim against Borteck survives because Plaintiff has sufficiently alleged that Borteck discriminated against her.  Unlike the NYSHRL, an individual employee can be held liable for his participation in discriminatory conduct under the NYCHRL. *See Nezaj*, 719 F. Supp. 3d at 330 (citing *Doe*, 36 N.Y.3d at 459).  For the same comments made by Borteck for which the Court found that *GPG* could be held liable under the NYCHRL (*see* AC ¶¶ 34-35, 40), it finds that *Borteck* can be held liable as an individual.  However, Plaintiff has not sufficiently alleged discrimination under the NYCHRL as to Hirsch.  Unlike Borteck, Plaintiff does not allege that Hirsch made any derogatory comments about her or about women in her presence.  Rather, Plaintiff alleges that she reported Borteck's conduct to Hirsch, who then took (or failed to take) certain action.  (*See* AC ¶¶ 48-51, 55-56, 59, 62).  Accordingly, the Court dismisses Count VII as to Hirsch.

In sum, with respect to Plaintiff's discrimination claims, the Court dismisses Count I in its entirety, dismisses Count IV as to Borteck and Hirsch, and dismisses Count VII as to Hirsch.

### 3. Plaintiff Fails to Allege Hostile Work Environment Under the NYSHRL Against Borteck and Hirsch, and Fails to Allege Hostile Work Environment Under the NYCHRL Against Hirsch

Defendants seek dismissal of Plaintiff's NYSHRL hostile work environment claims against Borteck and Hirsch (Count V), and Plaintiff's NYCHRL hostile work environment claim against Hirsch (Count VIII).[7]  The Court dismisses these claims.

For the same reason the Court dismissed Plaintiff's NYSHRL *discrimination* claims against the individual Defendants, it now dismisses her NYSHRL *hostile work environment* claims against Borteck and Hirsch as they cannot be held liable under the NYSHRL.  *See Nezaj*, 719 F. Supp. 3d at 329 (citing *Doe*, 36 N.Y.3d at 457-58).  And for the same reasons the Court dismisses Plaintiff's NYCHRL gender discrimination claim against Hirsch (due to insufficient allegations of discriminatory conduct), it dismisses Plaintiff's claim of hostile work environment under the NYCHRL against Hirsch.  *See Makhsudova*, 2022 WL 1571152, at *11 ("Because claims for hostile work environment and discrimination are governed by the same provision of the

---

[7]    Defendants do not seek dismissal of Plaintiff's Title VII hostile work environment claim against GPG (Count II); Plaintiff's NYSHRL and NYCHRL hostile work environment claims against GPG (Counts V and VIII, respectively); and Plaintiff's NYCHRL hostile work environment claim against Borteck (Count VIII). (*See* Def. Br. 12 ("These allegations may suggest a hostile work environment claim (though discovery will prove otherwise)[.]")).

NYCHRL, they are analyzed under the same standard." (internal quotation marks omitted)).

In sum, with respect to Plaintiff's hostile work environment claims, the Court dismisses Count V as to Borteck and Hirsch, and dismisses Count VIII as to Hirsch.

### 4. Plaintiff Plausibly Alleges Retaliation Under Federal and State Law Against GPG and Borteck, But Not Hirsch

Defendants seek dismissal of Plaintiff's retaliation claims against GPG under Title VII (Count III), Plaintiff's retaliation claims against all three Defendants under the NYSHRL (Count VI) and the NYCHRL (Count IX), and Plaintiff's retaliation claim against Hirsch under a theory of aiding and abetting (Count X). (*See* Def. Br. 14-19).[8] The Court dismisses Counts VI, IX, and X as to Hirsch, but finds that Plaintiff plausibly alleges the other retaliation claims.

### a. Plaintiff Plausibly Alleges Retaliation Under Title VII

Retaliation claims brought under Title VII, like discrimination claims, are analyzed using the *McDonnell Douglas* burden-shifting framework. To demonstrate a *prima facie* case of retaliation, a plaintiff must establish: "[i] that she participated in an activity protected by Title VII, [ii] that her participation was known to her employer, [iii] that her employer thereafter subjected her to a materially adverse employment action, and [iv] that there was a causal connection between the protected activity and the adverse employment action." *Kaytor* v. *Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

---

[8]    Defendants do not seek dismissal of Count X as to Borteck. (*Cf.* Def. Br. 15-17, 19; Def. Reply 10).

As with discrimination claims, at the motion to dismiss stage, "'the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation.'" *Duplan* v. *City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Littlejohn*, 795 F.3d at 316). For a retaliation claim to survive a motion to dismiss, "'the plaintiff must plausibly allege that: [i] defendants discriminated — or took an adverse employment action — against [her], [ii] because [she] has opposed any unlawful employment practice.'" *Id.* (quoting *Vega*, 801 F.3d at 90); *accord Sealy* v. *State Univ. of N.Y. at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020) (summary order).

As for the first prong (at the pleadings stage), "[i]n the context of retaliation, 'adverse employment action' is broader than it is in the context of discrimination." *Shultz* v. *Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017). "Nevertheless, the employer's conduct must be 'harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (alteration in original) (quoting *Hicks* v. *Baines*, 593 F.3d 159, 165 (2d Cir. 2010)). "Actions that are 'trivial harms' — *i.e.*, 'those petty slights or minor annoyances that often take place at work and that all employees experience' — are not materially adverse." *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White,* 548 U.S. 53, 68 (2006)); *accord Harvin* v. *Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 128-29 (2d Cir. 2019) (summary order). As for the second

prong (at the pleadings stage), which goes to causation, a plaintiff must plausibly allege that the retaliation was a but-for cause of the employer's adverse action. This only requires proof "that the adverse action would not have occurred in the absence of the retaliatory motive." *Duplan*, 888 F.3d at 625 (internal quotation marks omitted). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id.*

Here, too, Defendants argue that Plaintiff was not terminated and therefore did not sustain an adverse employment action.[9] To refute Plaintiff's allegations that Borteck admitted to her that, *had she not reported his misconduct*, Borteck would have allowed Plaintiff to continue working remotely (AC ¶ 57), Defendants rely on the December 2021-January 2022 email correspondence, which supposedly contradicts what would otherwise be direct evidence of retaliatory animus. (Def. Br. 18). However, as previously discussed, the Court disagrees.

Borteck's admission, as related by Plaintiff in the Amended Complaint, is key to the sufficiency of the allegations. True, in Hirsch's December 3, 2021 email, Hirsch stated that he and Plaintiff discussed working "for a defined period" after Plaintiff's relocation, and that he and Borteck wanted Plaintiff to

---

[9]     Defendants do not appear to contest that Plaintiff engaged in protected activity by reporting Borteck's conduct, as the Amended Complaint alleges she did. (*See* AC ¶¶ 45-48). Complaining about harassing conduct "is a paradigmatic instance of protected activity." *Nezaj*, 719 F. Supp. 3d at 335. Nor do Defendants appear to contest that, if Plaintiff were in fact terminated, this would constitute an adverse employment action. *See id.* at 336 ("[T]ermination is the archetypal form of adverse action.").

stay on through January 14, 2022.  (Rauls Decl., Ex. B at 5; AC ¶ 55).  And true, on January 3, 2022, Hirsch declined Plaintiff's offer to continue working past January 14, 2022, while GPG worked to hire her replacement.  (Rauls Decl., Ex. B at 4-5; AC ¶ 56).  But it is plausible to infer from Borteck's admission in the interim (AC ¶ 57) that Hirsch and Borteck would have allowed Plaintiff to continue working remotely *indefinitely*, despite her impending relocation to Pennsylvania, had she not reported Borteck's alleged misconduct.

Based on this reasonable interpretation of Borteck's admission, the Amended Complaint sufficiently alleges that GPG took an adverse employment action against Plaintiff because she opposed Borteck's unlawful discriminatory conduct.  In other words, Plaintiff plausibly alleges that her termination would not have occurred absent the retaliatory motive.  *See Duplan*, 888 F.3d at 625; *see also Mondelo* v. *Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21 Civ. 2512 (CM), 2022 WL 524551, at *11 (S.D.N.Y. Feb. 22, 2022) (finding that, even where a plaintiff "alleges a causal connection by a slim margin," that is "enough for a claim of retaliation to survive a motion to dismiss for failure to state a claim").  Moreover, the employer's conduct, as alleged, would dissuade a reasonable worker from making or supporting a charge of discrimination.  *See Shultz*, 867 F.3d at 309; *Hicks*, 593 F.3d at 165.  Therefore, the Court denies Defendants' motion to dismiss the Title VII retaliation claim against GPG (Count III).

### b. Plaintiff Plausibly Alleges Retaliation Under the NYSHRL and the NYCHRL Against GPG and Borteck, But Not Hirsch

"Retaliation victims are provided with broader protection under the NYCHRL — and, for purposes of this motion, under the post-amendment NYSHRL — than their federal counterpart." *See Wright*, 2024 WL 3952722, at *10; *see also Qorrolli* v. *Metro. Dental Assocs.*, 124 F.4th 115, 122-23 (2d Cir. 2024) (indicating that the post-amendment NYSHRL retaliation standard aligns with the NYCHRL's retaliation standard); *McHenry* v. *Fox News Network, LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020) ("Retaliation claims under the NYCHRL are subject to a broader standard than under ... Title VII." (citing N.Y.C. Admin. Code. § 8-107(7))).  The elements of a *prima facie* case of retaliation under the NYCHRL (and the post-amendment NYSHRL) are identical to those under Title VII, "except that the plaintiff need not prove any 'adverse' employment action; instead, [she] must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Leon* v. *Columbia Univ. Med. Ctr.*, No. 11 Civ. 8559 (NSR), 2013 WL 6669415, at *12 (S.D.N.Y. Dec. 17, 2013) (internal quotation marks omitted); *accord Stinson* v. *Morningstar Credit Ratings, LLC*, No. 22 Civ. 6164 (JLR), 2024 WL 3848515, at *23 (S.D.N.Y. Aug. 16, 2024).  And, unlike discrimination, individual employees can be held liable for retaliation under *both* the NYSHRL and the NYCHRL.  *See Nezaj*, 719 F. Supp. 3d at 330 ("[A]lthough the NYSHRL does not provide for direct liability for discrimination other than by an 'employer,' it makes it unlawful for 'any person' to retaliate." (citing N.Y. Exec. Law § 296(7); *Everett* v.

34

*N.Y.C. Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2023 WL 5629295, at *11, *14 (S.D.N.Y. Aug. 31, 2023) (noting that the NYSHRL proscribes discrimination by an "employer," and retaliation by "any person"))).

The Amended Complaint plausibly alleges retaliation under both the NYSHRL (Count VI) and the NYCHRL (Count IX) on the part of GPG and Borteck.  For the same reasons the Court finds that the Amended Complaint sufficiently alleges retaliation against GPG under Title VII, it finds that the Amended Complaint sufficiently alleges retaliation under both the NYSHRL and the NYCHRL against GPG.  *See Farmer* v. *Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 334 (S.D.N.Y. 2020) ("The Court's holding sustaining the [complaint]'s retaliation claims under Title VII and the [pre-amendment] NYSHRL dictates the same result under the NYCHRL, whose retaliation standard is similar to — but in part more permissive than — its federal and [pre-amendment] state analogues." (citing *Deveaux* v. *Sketchers USA, Inc.*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *6-7 (S.D.N.Y. Apr. 9, 2020) (drawing the same conclusion)))).  The direct evidence of retaliatory animus on the part of Borteck (*see* AC ¶ 57), which the Court previously discussed at length, and which the Court found sufficient to sustain Plaintiff's Title VII retaliation claim against GPG, is likewise sufficient to sustain Plaintiff's retaliation claims against Borteck under the more permissive NYCHRL and post-amendment NYSHRL.  Individual defendants can be held directly liable under these statutes for their own retaliatory conduct.  *See Nezaj*, 719 F. Supp. 3d at 330.  As the Amended Complaint states a plausible claim of retaliation

under Title VII against GPG because of Borteck's retaliatory conduct, the Amended Complaint necessarily states a plausible claim of retaliation against Borteck himself under the post-amendment NYSHRL and the NYCHRL.

By contrast, the Court dismisses the claims of retaliation under the NYSHRL and the NYCHRL against Hirsch, under theories of direct liability (Counts VI and IX) and aiding and abetting (Count X).  As for direct liability, Plaintiff argues that Hirsch "affirmatively retaliated against [Plaintiff] by criticizing her performance, trying to force her out of the company, and ultimately terminating her employment."  (Pl. Opp. 8).  In the Amended Complaint, Plaintiff alleges that she spoke with Hirsch regarding her complaints about Borteck (AC ¶ 48), that Hirsch took no action to remedy Borteck's misconduct, and that Hirsch took no action to investigate it (*id.* ¶ 49).  Instead, Hirsch "responded to [Plaintiff]'s complaints by criticizing her work performance and eventually offering her two months of pay to leave the company."  (*Id.* ¶ 50).  As alleged, Hirsch "attempted to insulate [GPG] from liability" in an April 28, 2021 email.  (*Id.* ¶ 51).  In the email, which is incorporated by reference in the Amended Complaint, Hirsch indeed states that it is "important for [Plaintiff] to understand that the work performance concerns that have been previously communicated to [her] must still be addressed."  (Rauls Decl., Ex. A at 2).  But Hirsch also states that he "investigated [Plaintiff's] concerns [about Borteck] and did not find that [she was] treated improperly."  (*Id.*).

The Court finds that these allegations cannot make out a state-law retaliation claim against Hirsch under a theory of direct liability. Plaintiff does not allege that Hirsch himself took an adverse employment action against her. Hirsch's comments about Plaintiff's work performance amount to "'petty slights or minor annoyances,' [which] are insufficient to establish an adverse employment action" under the NYCHRL. *Craven* v. *City of New York*, No. 20 Civ. 8464 (ER), 2023 WL 3097434, at *9 (S.D.N.Y. Apr. 26, 2023) (quoting *Lott* v. *Coreone Techs., LLC*, No. 14 Civ. 5848 (CM), 2016 WL 462486, at *15 (S.D.N.Y. Feb. 2, 2016)). Moreover, Hirsch's act of offering Plaintiff two months' pay to leave the company, without any attendant alleged retaliatory motive, is not sufficiently likely to deter a person from engaging in protected activity. *Cf. Leon*, 2013 WL 6669415, at *12. Defendants correctly point out that Hirsch did not "terminate[ ] her, threaten[ ] to terminate her, suggest[ ] there would be adverse consequences if she declined the severance offer, or treat[ ] her in any negative way when she opted to continue as [an] employee" after the April 28, 2021 email. (Def. Br. 15). The allegations in the Amended Complaint can sustain a retaliation claim against Borteck because of the direct evidence of retaliatory animus connecting Plaintiff's termination with Borteck's desire to punish her for complaining about him. (*See* AC ¶ 57). However, as alleged, Hirsch's conduct lacks this necessary link. *See Deveaux*, 2020 WL 1812741, at *7 (finding that the plaintiff stated no claim for retaliation under the NYCHRL against individual defendants where she had not alleged that they "participated" in her corporate employer's retaliatory conduct).

Hirsch could alternatively be liable for *Borteck's* discriminatory conduct under a theory of aiding and abetting. Both the NYSHRL and the NYCHRL "prohibit 'aiding, abetting, inciting, compel[ling] or coerc[ing] the doing' of any unlawful acts of discrimination under either title[.]" *McHenry*, 510 F. Supp. 3d at 68 (alterations adopted) (quoting N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6)); *see also Nezaj*, 719 F. Supp. 3d at 333 ("The same standard for aiding and abetting liability applies under the two statutes, as their texts are 'virtually identical.'" (quoting *Feingold* v. *New York*, 366 F.3d 138, 158 (2d Cir. 2004))). "To make out an aiding and abetting claim, the pleadings must allege that [defendant] actually participate[d] in the conduct giving rise to a discrimination claim." *Farmer*, 473 F. Supp. 3d at 337 (alterations in original) (internal quotation marks omitted). "[A]iding and abetting liability does not attach to a supervisor unless the facts alleged demonstrate that the aider and abettor *shared the intent or purpose of the principal actor.*" *Mondelo*, 2022 WL 524551, at *13 (emphasis added). In other words, where a defendant's "allegedly retaliatory conduct" can be "read as *supporting a broader retaliatory campaign by others*," that defendant can be liable under an aiding and abetting theory. *Nezaj*, 719 F. Supp. 3d at 336 (emphasis added).

Here, however, the Amended Complaint does not sufficiently allege that Hirsch supported Borteck's discriminatory and retaliatory conduct or shared his intent. Defendants correctly point out that Plaintiff "has pleaded no facts suggesting that Hirsch harbored any anti-woman animus, let alone any facts

suggesting such animus was aimed at Plaintiff or informed his purported decision not to investigate her claims." (Def. Br. 16).

Plaintiff alleges that Hirsch took no action to remedy or investigate Borteck's misconduct. (AC ¶ 49). But "without more, aiding and abetting liability does not attach in this Circuit for failing to adequately investigate a claim of discrimination." *Mondelo*, 2022 WL 524551, at *14 (internal quotation marks omitted). Nor do the aiding and abetting laws "expressly creat[e] liability for failure to … remedy a complaint of discrimination." *Karibian* v. *Columbia Univ.*, 930 F. Supp. 134, 146 (S.D.N.Y. 1996). Even if failure to investigate could constitute aiding and abetting, the April 28, 2021 email incorporated by reference into the Amended Complaint directly contradicts Plaintiff's claim that Hirsch did not investigate her complaint about Borteck; in fact, Hirsch stated that he did investigate Plaintiff's complaint. (Rauls Decl., Ex. A at 2). As such, this email negates Plaintiff's claim that Hirsch aimed only to insulate GPG from liability for Borteck's misconduct. (*Cf.* AC ¶ 51). Finally, although Plaintiff alleges that Hirsch informed her that she was terminated (*id.* ¶ 55), the Amended Complaint alleges that it was Borteck's decision to terminate her in retaliation for reporting his misconduct (*id.* ¶ 57). True, in Hirsch's December 3, 2021 email, he states that "Mark [Borteck] *and [Hirsch]* would like" Plaintiff to stay on through January 14, 2022. (Rauls Decl., Ex. B at 5 (emphasis added)). But, as discussed at length, Borteck's alleged admission about his true motivations is what makes this retaliatory. And there is no indication anywhere in the Amended Complaint or the emails incorporated by

reference in it that Hirsch shared Borteck's retaliatory intent.  As such, the Amended Complaint does not plausibly allege aiding and abetting by Hirsch.

In sum, with respect to Plaintiff's retaliation claims, the Court dismisses Counts VI, IX, and X as to Hirsch.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is GRANTED IN PART and DENIED IN PART.  The Court dismisses Count I; Counts IV and V as to Borteck; and all claims against Hirsch (Counts IV-X as to him).  The Clerk of Court is directed to terminate the pending motion at docket entry 29.

As the Court is due to refer the parties to a Magistrate Judge for settlement on or around February 12, 2025 (*see* Dkt. #37), the Court directs the parties to submit a joint letter regarding their desire to be referred for settlement on or before **February 12, 2025**.

SO ORDERED.

Dated:     February 7, 2025
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

40